Case number 19-3691 from Western Missouri, Mark Donelson v. Ameriprise Financial Svcs, et al., and 19-3693, Western Missouri, Mark Donelson v. Mark Zasci. And we'll hear first from Mr. Burkhalter. Thank you, Your Honor. Members of the Court, may it please the Court, this is an appeal from a district court order dated December of 2019 that did two things, it denied a motion, rather, to strike class action allegations, and it denied a motion to compel arbitration. If the Court has any questions at the outset, obviously, I'll be happy to answer those, but hearing none, I'd like to begin by examining refusal to strike the class action allegations. Now, ordinarily, of course, a decision whether to deny or to, rather, to strike class action allegations is committed to the district court's sound discretion. But this is an unusual case, and it's unusual for a number of reasons. First of all, it's our position, our contention, and we think it's borne out, that the district court applied the wrong legal standard. The district court, in denying the motion to strike class action allegations, recognized that under this court's McCrary decision, that claims for misrepresentation, claims for churning of securities accounts, claims for unauthorized trading, that those were unsuitable for class certification because of the individualized issues presented. However, the court went on to say that because common issues were present under Rule 23A, namely because the amended complaint alleged that these misrepresentations and actions were committed by, allegedly, by a representative toward other customers and class members, that commonality was satisfied. But commonality under 23A was never the basis of our argument, and so, therefore, the court effectively conducted no analysis whatsoever as to the basis for striking the class allegations. That's one point that distinguishes this from a typical case. Second, I can't emphasize this enough, members of the panel. The alleged classes in this case, the five B-2 classes that were alleged in the reply brief, are categorically, manifestly, in every other way possible, that they cannot be certified as a matter of law under this court's precedence and under the Supreme Court precedent. So this isn't a case or a situation of a close call, it isn't a case where more time and a scintillous chance of changing the outcome. As a matter of law, under this court's and Supreme Court precedent, they can't certify these B-2 classes for multiple reasons. The third reason why this is a different situation from your garden variety appeal of a motion to strike class action allegations is that here, the denial of this motion is frustrating the federal policy that favors arbitrability. The only thing standing in the way of arbitration of these claims are these spurious class allegations. And so we suggest that that's another reason to go ahead and decide this issue, and if the standard were abuse of discretion in evaluating the decision, we think it's not. We think it's de novo, because again, the wrong standard was applied. But even under an abuse of discretion standard, the district court abused its discretion. And finally, let me ask you, can I ask you, kind of alluding to this, which is the motion to strike, and I understand why you're arguing it, but and I think this is why, if we affirm on the motion to strike, so we say the district court did just fine. I'm trying to put all the pieces of this case together. Then don't we affirm on the whole case? And the reason why I say that is because you said the only thing standing in the way is are these spurious class action allegations. And so we then go back to the client agreement and the client agreement makes clear that you can't ask for arbitration while there's class until the class has been either decertified or not approved. And so isn't the case over at that point? Well, your honor, I think I agree with you. Let me let me try to state it this way, that it is a prerequisite to review of the denial of the motion to strike class, excuse me, the motion to compel arbitration that the court review and decide in our favor that it was an abuse of discretion or an error rather to to not strike the class allegations. So yes, if the court were to decide, if the court were to decide that the class allegations should not have been stricken, then that would resolve under the current posture of the case, the motion to compel arbitration for your honor's question. Yes, that's that was very helpful. And I appreciate I appreciate your candor. The question then becomes for me, was this a little premature in the way you went about doing this? And the reason why I say that is at least the district courts have talked about a motion to strike, especially in the arbitration context as being a very, very steep uphill climb, that there's basically no set of circumstances in which the class should go forward. And this isn't a motion to dismiss. This is an appeal for a motion for class certification. So we need to be doubly deferential here. And so I guess my question for you is what shows that this is this is the uncommon case one where and maybe you go back to what you've been talking about earlier that really says the district court should have stricken these allegations. Yes, your honor. I think the first response there is that, again, there was no analysis whatsoever at the district court level. And so at a bare minimum, what I would submit is that the court should, if it's inclined to go that route, to remand the case and and direct the district court to at least evaluate the merits of the allegations or the merits of the arguments we make against the class allegations, whether it's even possible to certify this class as these classes rather under 23 B2. So that's that's the first point. And in second, your honor, it really does turn on on the complete lack of any possible way to certify these B2 classes as a matter of law. Right now, there is no light. There is there is no hope to certify these classes. And let me turn, if I may, quickly as to why that is so. First, I'll note that originally the plaintiff here alleged 23 B3, a 23 B3 class. When we challenged that on the merchant to strike, the plaintiff switched horses, as it were, and went to B2 classes, which really was a tacit recognition that the original classes under B3 had no hope. Moreover, in the brief that the appellee filed in this court, Mr. He didn't have a leg to stand on with respect to the merits of the motion to strike. He wrote, should this court proceed so far as to consider the denial of appellant's motions to strike on the merits, Donaldson likely will have lost this appeal. But beyond that, your honors. These these claims seek non-incidental monetary relief. The complaint itself asks for four hundred and fifty thousand dollars for the named plaintiff. It asks for, and I quote, significant sorry, substantial damages for Peter to class members. The prayer for relief asks for, and I quote, actual damages, statutory damages, double damages, travel damages, punitive damages and consequential damages. Damages were sought under B3. And that hasn't changed because they've gone to B2. And as this court knows, based on the title reduced decision from the U.S. Supreme Court, unless the monetary relief is incidental, you can't have a class. Moreover, these classes require as a as a matter of law, based on how they're pleaded, they require extensive individualized inquiries. And that's fatal for two different reasons. First, on the ascertainability issue, a class has to be ascertainable. And what what are some of the individual determinations that you think the court would have to make? Yes, your honor. They involve, they are a small, the primary claim here is a rule 10B5 claim, and that misrepresentation was made. Was it made with cyanide? Was it relied upon? And in fact, was the reliance reasonable and loss causation also damages? So that's true for every single strain of 10B5 claim alleged the misrepresentations churning, for example, was the trading excessive. You'd have to analyze that in light of each individual customer's investment objectives. Were the trades unauthorized? That's another basis for 10B liability that requires a particular individualized inquiry into whether there was authorization for every single transaction in these various customers accounts. So those are just the flavor of some of the individualized issues. But I'll finish where I started, and that is a lot of the claims are based on misrepresentations, oral misrepresentations. And under this court's McCrary decision and countless other decisions, those are just categorically not suitable and appropriate for class treatment. Your honor, your honors, I've used nine minutes of my time. So with that, I need to ask Ms. Arbitrio if she would like to use the two minutes that she has reserved. No, you can proceed, Carl, thanks. All right. Thank you. Well, with that, your honor, I will continue. Cohesiveness, that's another issue. And in here, this court has issued at least four decisions, all of which members of this panel were on, including most recently Judge Grinder, your opinion in Harris last year that denied or denied certification of B2 classes or overturned decisions to certify B2 classes based in part on cohesion issues. The cohesion standard of B2, as the court knows, is more exacting than the B3 predominance requirement. And here you have there is no tie that binds the members of these B2 classes. There is no, for example, no race or gender or preexisting relationship. And again, you're going to have to have individualized inquiries to determine whether they even belong in the class in the first place, where they subjected to these misrepresentations, that they rely on them and so forth. And then you're going to have individualized inquiries into whether the merits of the claims can be proved. There's also rampant potential for intra-class conflicts. The purported, let me stop right there. The last thing I'll say before resuming my kind of a rebuttal is B2 classes require a request for an injunction. Four of these five classes don't even ask for an injunction. They don't ask for an injunction. They just don't. The fifth B2 class asks for an injunction, but it's an injunction under the Investment Advisors Act that is unavailable as a matter of law, as we say in our papers. So they flunk the most basic threshold. And often injunctions require, obviously, proof or risk of future injury. Defendant Sashi is no longer with the company. And that's a matter of record based on plaintiff's papers. So they're asked, they're not asking for injunctions. And even if they were, the perpetrator alleged is no longer with the company. So with that, I will reserve the remainder of my time for rebuttal. Thank you. Counselor, one question for you. It's a basic question, but I want to hear your answer to it. We've got the complaint says B3, as you mentioned, the memo then scales back and goes B2, but the complaint was never amended. So we still have a complaint that relies on B3. Are we talking about B3 here? Are we talking about B2 here? Are we talking about both of them here? Because the complaint was never amended. I'm a little confused about the procedural history. Yes, Your Honor. Well, you're quite right. There was no formal motion to amend the complaint. There was a, there was a disavow, a disavow in the reply brief of any attempt to proceed under B3, and then those B2 classes were added in the papers. We treated that as effectively an amendment as I suggest is permissible, but really it's a distinction without a difference, Your Honor, because the, the problems I'm citing to you, other than the injunctive issue, the problems of the potential for class conflicts, uh, you know, those issues apply whether it's a B3 class or a B2 class, regardless. Thank you, Your Honor. Very well. Thank you, Mr. Burkhalter. Ms. Arbitrio, I understand you have assigned your time to Mr. Burkhalter, am I right? Yes. Yes, that's accurate. Okay. Very well. Then we'll hear from Mr. Daniels. I may, please, Your Honor. Uh, let me address, uh, going out of order from what I intended to, uh, to bring up to the court, uh, with regard to amendments, it is well to note that at the instant that an appeal was taken by Ameriprise and Sachse, they also filed a motion to stay all proceedings in the district court. The district court invented a new rule for this circuit. Uh, admittedly, admittedly a rule that has required, that has acquired some, uh, some favor in other circuits. And that is that whenever an appeal is filed from a denial of arbitration, uh, the district court is divested of any further jurisdiction to entertain any further proceedings in the case. And as a consequence, nothing can happen. But nothing has happened in this case below for a year, uh, while the case was on appeal and indeed nothing happened in the case below, uh, during the year, approximately that the motion to, uh, strike the, uh, or dismiss the class action allegations of arbitration, uh, were penned. Counselor, I, I use, I don't, I hate to butt in, but I wanted to ask you about the amendment issue, which is B3 versus B2. Um, what's before us, uh, can you narrow the issues? Are we considering both? There was no, as you mentioned, there's no formal amendment. What are we dealing with here? It's a B2. We would have made an amendment had we the ability to do it, your honor. And it would have been an amendment to assert, uh, a, a class action claims under B2 exclusively. Okay. Thank you. Thank you, your honor. Uh, let me know first that this is, uh, uh, an unusual experience for me, not because of the electronic format, but because, uh, throughout my career, I have represented nothing but things. And for a change, I am representing an actual person in this case, Mark Donaldson. I think it's appropriate for the court to hear a little bit about this actual person, this unique for me, real living, breathing client. Uh, Donaldson was 58 when he started this case. Um, he works at wall at Walmart stores. A definitely a, uh, a client of this firm. Um, in one of his subsidiaries, he's an inventory picker, which means in the dead of night, he selects merchandise off of shelves in order to respond to customer orders, quote, um, he has no computer. He has a high school education. He doesn't write letters. Presumably he reads them. If he's going to communicate with anyone, it's either in person or on the phone. That's one of the living, breathing people here. The other living, breathing, breathing person is Mark Sachse. Mark Sachse was a broker dealer employed by Ameriprise and an investment advisor. Uh, the Ameriprise is licensed broker dealer and is an investment advisor. And, um, he, uh, originally represented or worked for Sachs for Mark Donaldson, the plaintiff at another retail brokerage. And when he moved to Ameriprise, uh, he took, uh, Donaldson with him or induced him to come. Um, that's not all Sachse was. Sachse used to be a lawyer, licensed as such in the state of Kansas. Uh, he was however, placed on a period of, uh, two years probation. He was then placed on a suspension of one year. Uh, he was then disbarred fully and finally on 2007 in 2007 before he got his securities licenses and became a broker dealer and indeed another species of fiduciary, not standing that he had just been de-pledged as one important series species of fiduciary. Um, when Sachse moved to Ameriprise, Donaldson told him, uh, I'm a great option. It turns out Donaldson was rather good at it. The only money Sachse ever made, uh, while Donaldson was a client of his was based on Donaldson originated, uh, option trades, Donaldson said, the rest of the securities in my account, I'm going to keep for investment long-term because this is my life savings and don't trade on margin. I've never traded on margin. I can't afford a stock. I don't want to buy it. For two years, Sachse obeyed the latter instruction, but then departed from it and began trading on option. Uh, of course, Donaldson could understand the colliginous mass of misinformation that is an Ameriprise client statement, and I can say that because I know, uh, he determined that very good and made on margin. Sachse says, I'll stop it. Sachse didn't stop it. Sachse said, I'll get somebody from home office to help us. And so he got a fellow named Ted Braille. Now, Ted Braille is one of several Ameriprise actors that appear in our little drum up. Uh, another is Ron Lyle, a lawyer at Ameriprise's home office. And the other is a fellow named Ted Trimble, who is described by Sachse as a being counter. Now, do Braille and Lyle and Trimble actually exist? Are they real people? Or was someone masquerading as them? We don't know because no discovery has been conducted in this case, not withstanding the fact that it's been pending for two years, we don't know whether there is a Braille employed by these people or a Trimble or a Lyle. We do know that people representing themselves to be Braille or Trimble or Lyle promised Donaldson that they would stop the trading, uh, in his account on margin, that it never happened, that they then promised him thousands of dollars in compensation, uh, for the injury occasioned by this unlawful trading, that several times Sachse promises, promised to have sent these checks to Donaldson by UPS, which, uh, to their eternal damnation, apparently they lost these checks each and every time, even when Sachse says he went to the UPS location to chase the truck down and obtain and retrieve the check manually from it, eventually Sachse says, well, you need Donaldson to ignore whatever paper statements you get from Ameriprise and only believe what it is I tell you about the magnitude of cash insecurities in your account. And in fact, Donaldson is told by Sachse that there is $483,000 in cash and assets as an account, and Donaldson says, well, since you Sachse have said there is so much problem with my account occasioned by a changeover, a computer changeover at Ameriprise, uh, why don't we liquidate all of the securities in my account and you give me another check for $483,000. And so, uh, that allegedly is done. But lamentably enough, once again, UPS loses the check and it's never actually received by Donaldson. Mr. Daniels, you're, you're describing, uh, uh, an interesting case involving your client, uh, Mr. Donaldson and a series of misrepresentations to him. How is this case a class action case? I think class action because Ameriprise has hired a disbarred fiduciary to act as a fiduciary for high school graduate inventory pickers who work at Sam's club. They have reached their duty reasonably to vet those persons to whom they entrust the life savings of customers like Donaldson. And we would have discovered the magnitude of the injury. Wouldn't that require, wouldn't that though require a complete inquiry into all of the potential individualized misrepresentations to all the presumably potential other inventory pickers who, who are victims of this? I, I don't see how the common questions predominate over the individual questions here. Well, for, from our perspective, and it may not be, uh, a satisfactory explanation to the court, uh, from our perspective, commonality is satisfied by the fact that a man of this kind in character was entrusted with client funds and given the authority to trade and deal in and liquidate client assets and cash and assets. When clearly he was demonstrably unqualified to do it, Kansas Bar Association having been required to pay nearly $30,000 to his clients in compensation for monies that he stole from them. So our position is that a common question here is whether, uh, Ameriprise itself reached its fiduciary duty by hiring such as Mark Saxe to manage the life savings of people like Donaldson. That's our- Counsel, can I interrupt you to ask you simply, this sounds like a case for arbitration. Why isn't this appropriate for arbitration? Well, it's not appropriate for arbitration for a couple of reasons. One is Missouri law controls and Missouri law says that this arbitration agreement cannot be enforced. Why? Because according to Missouri Supreme Court and bank, Ameriprise retains the ability to amend this arbitration agreement at any time, even after arbitration. Well, let me interrupt you again to say I'm very familiar with Baker and Brewer. Uh, but those is it's gotta be really one sided unilateral and here when they retain the right, don't they have to give notice and then a change can't be made? Well, according to bank, actually not your honor. That's not actually what it says. Um, that's not actually what the arbitration agreement says. Neither does Brewer believe it important that notice has to be given in advance. In other words, as far as I read Brewer, Brewer considers the question of whether notice need be given in advance, but, uh, declares that since the unilateral right was retained to amend the agreement, that that was enough to deprive the, uh, agreement of mutuality and of consideration. At least that's the way I look at it. And I hope I'm not misreading it. Uh, obviously your honor sat that very bench and knows quite a lot about what it did and does. All right. So, Mr. Daniels, do you, do you have a good faith believer, a good faith, not believe a good faith, uh, reason to be able to plead that anyone other than Mr. Donaldson was defrauded? Well, uh, yes, I do. Um, um, a bite to the, I suppose it's the old time lawyer biting dog principle. This lawyer Sachse, when he was a lawyer, bit 17 clients costing them nearly $30,000. I find it difficult to believe that the biting dog Sachse did not bite 17, uh, uh, individuals, uh, uh, with whose, whose life savings were entrusted to it. That's it. Now, maybe that's simple minded, but that is the basis for our work. I suppose that now, uh, it's, it's appropriate to, uh, let me finish up with what Sachse eventually did. Keep in mind that Sachse ultimately gets fired by Ameriprise, uh, because they send a letter to Donaldson saying we fired, um, we fired Sachse for impersonating home office personnel and for lying to customers. Okay. Um, we don't know whether the impersonations occurred exclusively with regard to Donaldson. Um, an inference could be made, but there would be no basis for it, frankly. Uh, neither do we know whether, uh, the lying that Sachse, that caused Sachse's firing, uh, was lying merely to Donaldson or whether it occurred with other people. Um, now before that, uh, occurred, of course, Sachse began liquidating Donaldson's account, sending him various checks, saying, uh, among other things, here's a check for some of the money we promised you to, uh, compensate you for the injury, uh, that you've suffered. Uh, or here, here, here is a check to compensate you for, uh, to pay dividends to you for shares you own. Um, he didn't own any of the shares that allegedly produced the cash dividends. Uh, he wasn't receiving any money from Ameriprise to pay for alleged problems with his account. Sachse was simply liquidating this man's life savings and paying him the cash as in for alleged dividends on securities he didn't own and or in payment of, uh, of, uh, problem compensation monies that Ameriprise had never agreed to pay. Let me close by talking about arbitration. I know that it has almost sacramental status. All right. Um, but the Supreme court has, uh, to some degree, um, well, they haven't, well, it hasn't spat in the cup exactly. It's made it clear that arbitration to the extent that it is permitted under the FAA has to proceed under the FAA. Now that means that the only thing that can be appealed in this case, even arguably is the denial of arbitration. And then only if, uh, it was the product of a trial, which could be a jury trial could be a bench trial under section four of the FAA. That didn't happen. I'd ask the court to consider carefully the, uh, arbitration problems here. I understand the impetus towards arbitration, but, uh, we're talking this court's interlocutory appeal jurisdiction. That's to be generously guarded, not to be given away and certainly not to be not within its embrace, be dragged in behind something that is. Thank you, Your Honor. Thank you, Mr. Daniels, Mr. Burkhalter, you have some rebuttal time. Yes, Your Honor. Very quickly on the issue of consideration. Let me be clear on this point. The notion of mutual promises, that's not the basis for consideration for the Klein agreement. The consideration that flowed from the Murrah prize was open to the account in the first place. In other words, the agreement is supported by consideration, not by virtue of some promise to arbitrate, but by accepting the account and allowing him to transact business. In fact, if you look at the client agreement, which is in our appendix at page two 16, in all caps, immediately above paragraph four, which is the amendment provision that document reads, and I quote again, all caps in consideration of enterprise financial, accepting your brokerage account, you agree to the following. That's the consideration. Now, turning back to the issue of the more important issue, a few points. First, plaintiff conceived in his papers that it is appropriate to strike class allegations where it's a matter of law. The complaint demonstrates that a class can't be certified. We point that out on page 30 of our brief that plaintiff, and I quote a motion to strike class allegations quote should be granted where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met close quote. So plaintiff has conceded in this case that that is the standard. Second, I'll note that courts routinely, and we cite cases in our brief routinely strike class allegations. There is no super high exacting standard for that. And I would commend to the court's attention that John case from the fifth circuit, which we cite is 501 F third, four, four, three. And there the court held it rejected the argument that it was premature for the class issue at an early stage. It will be six stage and held I quote, where it is facially apparent from the pleadings that there is no ascertainable class district court may dismiss the class allegations on the pleading. And finally, at bare minimum, at bare minimum, the court should remain the case with instructions from the district court to at least take up and analyze the issues that we make the B2 issue. Heard Mr. Donaldson speak about commonality. Again, that's not the issue. The issue is whether B2 can be satisfied. I would respectfully ask at minimum that the court, the district court being asked to consider those arguments on remand, if that's, if that's the decision that the court makes in this case. Thank you very much. Very well. Thank you, counsel. We appreciate your appearance today and your briefing case is.